James JACKSON, Jr., Petitioner,

v.

UNITED STATES POSTAL
SERVICE, Respondent.

No. 81–4184
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 25, 1982.

Frank Pola, Jr., New Orleans, La., for petitioner.

Karen Intrater, Stephen E. Alpern, U.S. Postal Service, Washington, D.C., John P. Volz, U. S. Atty., Elizabeth A. O'Connell, Asst. U. S. Atty., New Orleans, La., for respondent.

Before GEE, GARZA and TATE, Circuit Judges.

PER CURIAM:

Petitioner James Jackson, Jr., seeks review of the decision of the Merit System Protection Board (MSPB) sustaining his removal from the Postal Service. Jackson, a preference eligible employee, was removed from the position of carrier with the United States Postal Service effective February 27, 1980, for failure to meet the physical requirements of his position. Jackson's request for a permanent light duty assignment was denied.

Jackson began work as a mail carrier for the Postal Service on April 9, 1977. As a carrier, Jackson was required to climb stairs, to do excessive walking, standing, and bending, and to lift weights in excess of 50 to 60 pounds. On January 10, 1980, Jackson submitted a request for permanent light duty assignment supported by a physician's statement advising that the petitioner could not perform the above listed duties. This medical statement was substantially relied on to support the removal action. In this appeal, petitioner claims that the United States Postal Service violated its own rules and the letter carriers' collective bargaining agreement when the Service terminated him. Petitioner also claims that the Service acted in an arbitrary and capricious manner.

### Jurisdiction

The Postal Service asserts that this court is without jurisdiction to entertain Jackson's petition because it was not filed within the 30-day period prescribed by 5 U.S.C. § 7703(b)(1).[1] Jackson received notice of the final opinion and order of the MSPB on April 16, 1981, and filed this appeal on May 18, 1981. The thirtieth day of the appeal period fell on the preceding Saturday, May 16. Rule 6(a) of the Federal Rules of Civil Procedure provides that in computing any period of time prescribed by the Federal Rules, if the end of the period

---

1. 5 U.S.C. § 7703 provides, in pertinent part:
   Judicial review of decisions of the Merit Systems Protection Board
   (a)(1) Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.
   (2) The Board shall be the named respondent in any proceeding brought pursuant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision issued by the Board under section 7701. In review of a final order or decision issued under section 7701, the agency responsible for taking the action appealed to the Board shall be the named respondent.
   (b)(1) Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals as provided in chapters 91 and 158, respectively, of title 28. *Notwithstanding any other provision of law, any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board.* (emphasis supplied).

is a Saturday, Sunday or holiday, the period runs until the end of the next day that is not a weekend or holiday.[2] This court has consistently used Rule 6(a)'s method of computing federal statutory time limitations. *Lawson v. Conyers Chrysler, Plymouth, Etc.*, 600 F.2d 465, 466 (5th Cir. 1979). Because the thirtieth day fell on a Saturday, the period ran through the following Monday, and this court therefore has jurisdiction of the appeal.

### Abuse of Discretion

■ Jackson charges that to dismiss him was arbitrary and capricious because it did not best promote the efficiency of the Service, as commanded by 5 U.S.C. § 7513(a).[3] We disagree. The petitioner's testimony relative to his medical condition and the statements submitted by his physician as contained in the record are uncontroverted and establish by a preponderance of evidence that petitioner could not perform duties involving excessive climbing, walking, standing, bending, or heavy lifting, which are the requirements for the position of mail carrier. The removal of an employee whose physical condition renders him incapable of performing the duties of his position is recognized as constituting such cause as will promote the efficiency of service. *Piccone v. United States*, 407 F.2d 866, 872 (Ct.Cl.1969). Jackson had submitted the medical statement, hoping for a permanent transfer to light duty, but he acknowledged that there was a requirement of five years of service prior to becoming eligible for such a transfer.[4] Since he did not have the five years of required service and the evidence proves that he could not physically handle the position of mail carrier, the Service did not abuse its discretion when Jackson was terminated.

### Issues Not Raised Below

■ Jackson contends that the MSPB decision sustaining his removal should be overturned because the Postal Service violated certain rights under Article VIII of the collective bargaining agreement and under the Veterans Preference Act, 5 U.S.C. §§ 3309 through 3316, 3351, 3363 and 3504. These allegations were not asserted by Jackson prior to this appeal. An appellate court does not give consideration to

**2.** Federal Rule of Civil Procedure 6(a) Computation. In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday. When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this rule and in Rule 77(c), "legal holiday" includes New Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States, or by the state in which the district court is held.

**3.** 5 U.S.C. § 7513. Cause and procedure (a) Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service.

**4.** Article XIII, Section (B)(2)(a) of the collective bargaining agreement provides:

B. Employee's Request for Reassignment
2. Permanent Reassignment
a. Any ill or injured full-time regular or part-time flexible employee having a minimum of five years of postal service, or any full-time regular or part-time flexible employee who sustained injury on duty, regardless of years of service, while performing the assigned duties can submit a voluntary request for permanent reassignment to light duty or other assignment to the installation head if the employee is permanently unable to perform all or part of the assigned duties. The request shall be accompanied by a medical certificate from the United States Public Health Service or a physician designated by the installation head giving full evidence of the physical condition of the employee, the need for reassignment, and the ability of the employee to perform other duties. A certificate from the employee's personal physician will not be acceptable.

issues not raised below, except in exceptional cases to prevent an injustice. *Hormel v. Helvering,* 312 U.S. 552, 553, 555–56, 61 S.Ct. 719, 720–721, 85 L.Ed. 1037 (1944). This is not one of those exceptional cases. As discussed above, the evidence supports that Jackson's removal was for "such cause as will promote the efficiency of the Service." Further, Jackson's contentions of procedural errors are without merit. First, Jackson's removal did not violate the "spirit" of the Veterans Preference Act as embodied in 5 U.S.C. §§ 3309–3316, 3351 and 3363, since none of these provisions governs removal actions.[5] Second, the record contains no evidence that Jackson has a service-connected disability of 30% or more so as to bring him within the coverage of section 3504(b).[6] Finally, the monthly review of Jackson's temporary light duty status was not in violation of the National Agreement, which provides for mandatory annual review and allows for more frequent review at the discretion of the installation head.[7]

### Conclusion

We conclude that there is no exceptional reason to consider issues not raised below,

and therefore, having found no abuse of discretion, the judgment of the MSPB is

AFFIRMED.

---

**5.** The Veterans Preference Act does not cloak veterans with any "penumbral rights"; its provisions are necessarily specific, and for claimants to benefit from them they must show themselves to be clearly within the ambit of those provisions. *Crowley v. United States,* 527 F.2d 1176, 1182 (Ct.Cl.1975).

**6.** 5 U.S.C. § 3504(b).

If an examining agency determines that, on the basis of evidence before it, a preference eligible described in section 2108(3)(C) of this title who has a compensable service-connected disability of 30 per cent or more is not able to fulfill the physical requirements of the position, the examining agency shall notify the Office of the determination and, at the same time, the examining agency shall notify the preference eligible of the reasons for the determination and of the right to respond, within 15 days of the date of the notification, to the Office. The Office shall require a demonstration by the appointing authority that the notification was timely sent to the preference eligible's last known address and shall, before the selection of any other person for the position, make a final determination on the physical ability of the preference eligi-

ble to perform the duties of the position, taking into account any additional information provided in the response. When the Office has completed its review of the proposed disqualification on the basis of physical disability, it shall send its findings to the appointing authority and the preference eligible. The appointing authority shall comply with the findings of the Office. The functions of the Office under this subsection may not be delegated.

**7.** Article XIII, Section (D)(6), of the National Agreement provides, in pertinent part:

D. General Policy Procedures

6. The installation head shall review each light duty assignment at least once each year, or at any time the installation head has reason to believe the incumbent is able to perform satisfactorily in other than the light duty assignment the employee occupies. This review is to determine the need for continuation of the employee in the light duty assignment.