**In re Iona Sue MASTERS, Debtor.**

**Alexander T. BISHOP,
Trustee, Plaintiff,**

**v.**

**Iona Sue MASTERS and Forest City Trading Group, Inc., an Oregon corporation, Defendants.**

Bankruptcy No. 386–01365–P7.

Adv. No. 86–0296.

United States Bankruptcy Court, D. Oregon.

May 6, 1987.

Alexander T. Bishop, Portland, Or., Trustee.

David Gold, Portland, Or., for Forest City.

Dennis A. Boardman, Portland, Or., for Iona Sue Masters.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

### FACTS

The Debtor is, and was prior to the filing of bankruptcy, an employee of Buckeye

Pacific Corporation. As an employee, she was eligible to, and did participate in the Retirement Savings Plan (the "Plan"), administered by Forest City. The Plan is qualified under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001 *et seq.*, and the Internal Revenue Code of 1954, 26 U.S.C.A. § 401(a) and (k) (West Supp.1986).

The Plan, as is pertinent to this Debtor, is funded by deferred income contributions made by the employee ("deferred income account") and matching employer contributions. Amended Article 10.1 of the Plan allows participants, in the case of hardship, to withdraw money from both employee funded and vested employer funded accounts. Participants are eligible to borrow against their accounts if the loan applications meet the approval of the Plan committee. Amended Article 10.3. The Plan provides that the benefits and interests under the Plan shall not be voluntarily or involuntarily alienated or assigned, except under the terms of a qualified domestic relations order as defined in the Internal Revenue Code and regulations. Amended Article 17.8.

## ISSUES

The Trustee's action is limited to seeking turnover of the funds in the Debtor's deferred income account. He asserts no claim to the account funded by matching employer contributions. Forest City has conceded that the deferred income account is property of the bankruptcy estate.[1]

The issues which must be resolved are:

1. Whether the funds in the Debtor's deferred income account are subject to exemption under ORS 23.170, the Oregon pension exemption; and,

2. Whether the Bankruptcy Court should decline to enter an order, when compliance with such order may jeopardize the tax qualified status of the Plan by

---

**1.** Section 541(c)(2) of the Bankruptcy Code (11 U.S.C.) excepts from the definition of property of the estate the debtor's interest in a trust that contains a restriction on the transfer of his beneficial interest that is enforceable under non-bankruptcy law. In many cases involving

requiring the turnover of funds in contravention of the anti-alienation provisions of the Plan.

## DISCUSSION

I. *The funds in the Debtor's deferred income account are not subject to exemption under ORS 23.170.*

Two tests have been established by the Oregon courts to determine whether a specific plan falls within the ORS 23.170 exemption. *Hebert v. Fliegel,* 813 F.2d 999 (9th Cir.1987). First, the "person granted the pension must be different from the person granting the pension." *In re Mace,* 4 B.C.D. 94, 95 (Bankr.D.Or.1978). Second, the debtor may not exercise such control over the assets of the pension as to make it more like a conventional savings account and less like a true retirement fund. *In re Ott,* 69 B.R. 1 (D.Or.1986). The deferred income account fails to meet the requirement enunciated in *Mace,* that the person granting the pension be different from the person granted the pension. The funds in the employee deferred account are the result of the Debtor's voluntary contributions to the account. The fact that the mechanism for the account was set up by another party, the employer, does not change the fact that the funds come from the Debtor's compensation, and are placed in the account, out of the reach of her creditors, by her voluntary action. Thus, the funds in the Debtor's deferred income account are not exempt under ORS 23.170.

II. *Forest City must turn over sums that are property of the estate despite the possibility of tax disqualification.*

Before discussing Forest City's argument, it is important to clarify what is *not* being decided by this ruling. This Court is not deciding whether the Plan will lose its tax qualified status if it complies with a turnover order. That issue must be

---

the proper treatment of a debtor's interest in an ERISA plan, a key issue is whether that interest is excluded from the estate via § 541(c)(2). This is not an issue in the case at bar because of the stipulation of the parties.

determined by the Internal Revenue Service ("I.R.S.") in the first instance, and subsequently by the appropriate court if that decision is appealed. Such a determination is, at this juncture, outside the jurisdiction of this Court.

The issue presented by Forest City goes to the equitable powers of the Court to construct its orders in a manner that will not require the trustees of the Plan to choose between contempt and possible tax disqualification. Sections 401(a)(13)[2] and (k)[3] of the Internal Revenue Code (26 U.S.C., hereinafter "I.R.C.") contain mandatory provisions relating to the tax qualified status of pension plans. If Forest City turns over the funds in the Debtor's account to the Trustee in bankruptcy, it would appear to violate the provisions of I.R.C. §§ 401(a)(13) and (k) dealing with alienation of benefits and withdrawal of benefits. It is this violation which causes Forest City to fear that the tax qualified status of the Plan will be withdrawn.

Forest City acknowledges that in the recorded decisions in which the tax disqualification argument has been made in opposition to a turnover action by a bankruptcy trustee, the courts have entered the turnover orders despite expressing sympathy for the plight of the plan trustee. *See McLean v. Central States Pension Fund,* 762 F.2d 1204 (4th Cir.1985); *Regan v. Ross,* 691 F.2d 81 (2nd Cir.1982); and *In re Threewitt,* 20 B.R. 434 (Bankr.D.Kan.1982). However, Forest City argues that the rationale for those decisions does not exist in this case. The leading case, *Regan v. Ross,* 691 F.2d 81, involved an order requiring the plan trustee to turnover a portion of the debtor's monthly pension payment to the bankruptcy trustee in order to fund the debtor's Chapter 13 plan. The Court of Appeals held that in light of the clear legislative intent of Congress to make Chapter 13 available to persons living on pensions, Congress implicitly amended I.R.C. § 401(a)(13) by the subsequent enactment of the Bankruptcy Code to except orders for turnover issued pursuant to the Bankruptcy Code. 691 F.2d at 86–87.

To avoid the implicit amendment argument of *Regan v. Ross,* Forest City bases its argument on the distribution restrictions found in I.R.C. § 401(k). Section 401(k) was enacted by Congress on the same date as the Bankruptcy Code, November 6, 1978. Thus, Forest City argues, the implicit amendment rationale cannot be applied to § 401(k).[4]

**2.** 26 U.S.C.A. § 401(a)(13) states:
Assignment and alienation.—
(A) In general.—A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs. For purposes of this paragraph a loan made to a participant or beneficiary shall not be treated as an assignment or alienation if such loan is secured by the participant's accrued nonforfeitable benefit and is exempt from the tax imposed by section 4975 (relating to tax on prohibited transactions) by reason of section 4975(d)(1). ...
(B) Special rules for domestic relations orders.—Subparagraph (A) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that subparagraph (A) shall not apply

if the order is determined to be a qualified domestic relations order.

**3.** 26 U.S.C.A. § 401(k)(2) states:
Qualified cash or deferred arrangement.—A qualified cash or deferred arrangement is any arrangement which is part of a profit-sharing or stock bonus plan (or a pre–ERISA money purchase plan) which meets the requirements of subsection (a)—
....
(B) under which amounts held by the trust which are attributable to employer contributions made pursuant to the employee's election may not be distributable to participants or other beneficiaries earlier than upon retirement, death, disability, or separation from service (or in the case of a profit sharing or stock bonus plan, hardship or the attainment of 59½) and will not be distributable merely by reason of the completion of a stated period of participation or the lapse of a fixed number of years. ...

**4.** The doctrine of amendment or repeal by implication is applied when two statutes with irreconcilable provisions apply to a given situation. The later act is considered to repeal or

The weakness of the implicit amendment rationale is further highlighted by the amendment of I.R.C. § 401(a)(13) in 1984 to include an exception to the non-alienation clause for qualified domestic relations orders. Pub.L. 98–397, § 204(a)(3) (1984). If one were to apply the statutory rule of *expressio unius est exclusio alterius* one would conclude that Congress in 1984, some two years after the decision in *Regan v. Ross,* considered exceptions to the non-alienability provision of § 401(a)(13), and declined to except turnover orders issued pursuant to the Bankruptcy Code.

This Court is left with the opinion that Congress passed two statutes with potentially conflicting provisions. A decision to enforce either law to the exclusion of the other may result in injury to the parties whom Congress intended to protect by its legislation.

Section 541(a) of the Bankruptcy Code defines property of the estate to include all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case. This definition considerably broadened the definition of property of the estate found in prior bankruptcy law. *Sierra Switchboard v. Westinghouse,* 789 F.2d 705 (9th Cir.1986). Under the present definition, the Debtor's interest in the funds in her employee deferred income account are property of the estate, and thus subject to the reach of the Trustee. The broad definition of property of the estate, and the trustee's ability to gather that property for the benefit of creditors are key elements of the Bankruptcy Code. They function to protect the interest of the unsecured creditors, and further the equitable distribution of assets which is one of the purposes of the Bankruptcy Code. *See In re Adeeb,* 787 F.2d 1339 (9th Cir. 1986). This Court is empowered to enter orders that are necessary to carry out the provisions of the Bankruptcy Code, includ-

ing orders requiring turnover of property of the estate.[5]

On the other hand, ERISA and the Internal Revenue Code contain provisions formulated to assure that the proceeds of a pension plan are available to support the employee and his family upon retirement. This is one of the main purposes of ERISA. *Cartledge v. Miller,* 457 F.Supp. 1146 (S.D. N.Y.1978). This Court also has a duty to structure its orders in such a manner as to further the goals of ERISA.

In this case, the Court is faced with a direct statutory mandate under the Bankruptcy Code that property of the estate be turned over to the trustee. Whether compliance with this order by Forest City will result in tax disqualification is not certain. The I.R.S. has in the past demonstrated some flexibility in applying I.R.C. § 401(a)(13) by allowing an exception for domestic relations orders even prior to the amendment of I.R.C. § 401(a)(13) in 1984. *See* Rev.Rul. 80–27, 1980–1 C.B. 85; (cited in *Operating Engineers, Etc. v. Zamborsky,* 650 F.2d 196 (9th Cir.1981)). It is within the discretion of the I.R.S. in the first instance to determine whether compliance with a turnover order will result in disqualification of the Plan. Disqualification is not automatic. Furthermore, there is no evidence that the I.R.S. has in the past disqualified plans that comply with bankruptcy turnover orders. Under these circumstances, this Court has a duty to enforce the provision of federal law that is directly before it at this time, and therefore, will require turnover.

## CONCLUSION

Forest City is ordered to turnover to the Trustee the funds in the Debtor's deferred income account.[6] These funds are property of the estate, and are not subject to exemption under ORS 23.170.

---

amend the prior act to the extent of the inconsistency. *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976). Judicial determinations of repeal or amendment by implication are disfavored, and will only be found when the intent of the legislature to repeal is manifest. *Id.*

**5.** 11 U.S.C.A. § 105 (West Supp.1986).

**6.** This proceeding is a core proceeding as described in 28 U.S.C. § 157(b)(2)(E).

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law, and pursuant to Bankruptcy Rule 7052, they will not be separately stated.